IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX D. ROSS, | No. CIV S-09-0984-KJM-CMK-P |
|     Plaintiff, | |
|   vs. | FINDINGS AND RECOMMENDATIONS |
| A. DAVID, et al., | |
|     Defendants. | |
| _____/ | |

      Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment (Doc. 27).  Plaintiff also filed a motion for summary judgment (Doc. 33) and an opposition to defendants' motion (Doc. 34).  Defendants filed a reply (Doc. 35) and opposition to plaintiff's motion (Doc. 36).

## I.  BACKGROUND

**A.  <u>Plaintiff's Allegations</u>**

      In his complaint, plaintiff alleges that following his transfer to High Desert State Prison (HDSP) in April 2007, he was denied and delayed proper medical care.  He claims he

1

sought treatment for pain in his right wrist, for which he was forced to file a Form 602 inmate grievance. He then was seen by defendant David[1] on August 1, 2007. However, defendant David acted unprofessionally and denied plaintiff a low bunk chrono after requiring plaintiff to show that he was unable to get up onto the top bunk. He alleges defendant Deward failed to report defendant David's un-professionalism or put a stop to it. He further claims that defendant David caused him to suffer continuing pain by failing to allow him a bottom bunk, and that this was malicious. He claims defendant Swingle agreed with defendant David's opinion, forcing plaintiff to suffer in pain. Defendants Swingle and Roche both allegedly failed to supervise or correct defendant's David's actions.

**B. Undisputed Facts**

According to plaintiff, and the exhibits he submitted as evidence, the following relevant events occurred. Plaintiff was transferred to HDSP on April 17, 2007. On June 4, 2007, plaintiff was seen by FNP Reid, who discontinued his low bunk chrono. (Pl. Stmt of Undisputed Facts, Doc. 34-2, at 5). FNP Reid examined plaintiff and noted that plaintiff was "ambulatory without guarding." (Pl. Table of Attach., Attach. F, Doc. 34-4 at 58). Plaintiff had full range of motion in his ankle without pain or limitations; but it was noted an MRI showed he has an old fracture and osteoarthritis. (Id.) FNP Reid stated: "There is no plan to continue the low bunk/low tier chrono." (Id.) On June 4, 2007, plaintiff also submitted his inmate grievance (Log # HDSP-C-07-02326). In the grievance he described his problem as follows:

> I saw the Regular Dr. today and I needed to update my lower bunk chronal from Solano to HDSP. I've been receiving lower bunk chronal since 7-12-03. I have a bone problem that causes me to break bones very easily over the years. I've had 8 broken bones. 3 of these break's took place while I've been locked up on this K-number. I have bad arthritis and I have a metal plate in my l forearm my r. wrist and I had a metal plate taken out of my right ankle but there are metal pieces left in my ankle that should have been removed with the plate. The Dr stated today she will not renew my lower bunk chronal without a specialist in bone problem.

---

[1] Defendant David is not a party to this motion as he has not been served.

>She stated the other Dr. only gave me the lower bunk chronal because there was more bunks available which means to be [sic] I'm being denied renewal of the chronal for what she believe to be shortage of bunks. I explained the difficulty I have with combined wrist and leg arthritis. She also knows my leg give's out on me from time to time. All documents and the long history of bone issue are in my medical file. If my leg give out jumping off the bunk and breaks she is the fault. (Compl., Doc. 1, at 18, 20, (spelling errors corrected)).

This grievance was partially granted at the informal level on June 25, 2007, in that plaintiff had been scheduled for another medical appointment to discuss this problem in less than a month. Unsatisfied with that response, plaintiff appealed to the first formal level. He was interviewed by A. David PA-C on August 1, 2007. During this interview, defendant David, accompanied by defendant Deward, accompanied plaintiff to his cell where he demonstrated how he accessed the top bunk by using a stool and hobby table.[2] (Pl. Stmt of Undisputed Facts, Doc. 34-2, at 7, 8). Plaintiff acknowledges that his interview with defendant David "was a result of the appeal, not as a result of a medical request for treatment." (Pl. Stmt of Undisputed Facts, Doc. 34-2, at 8). Following the interview by defendant David, defendant Swingle issued the first level decision, denying plaintiff's grievance. Dr. Swingle stated:

>At this interview, Ms. David discussed your appeal requests with you. She states that after a careful evaluation of your medical history, physical examination, and MRI and x-ray results, and observing you in your cell climbing to your upper bunk, she determined that your wrists and ankles are without instability or pain. Ms. David ordered pain management medication for you. Your request for a lower bunk/lower tier chrono is not granted as it is not medically indicated at this time. (Compl., Doc. 1, at 23).

Again dissatisfied with this decision, plaintiff appealed to the second formal level. Defendant Roche issued the second level decision, again denying plaintiff's request for a lower bunk/lower tier chrono as not medically indicated. Dr. Roche stated:

---

[2] Who requested/required the demonstration is disputed. Plaintiff claims defendant David forced him to do the demonstration; the defendants indicate it was plaintiff's idea. However, who's idea it was is immaterial for the purpose of this motion.

3

> The second level appeal response is essentially the same as at the first level. You have the right to discuss your treatment options with your primary care provider, but they will make all medical treatment decisions based on medical findings, although you may not agree with them. A review of your pharmacy profile shows you are currently getting Tylenol and Naproxen for pain management. Your request for a lower bunk/lower tier chrono was not granted as it was not recommended by your primary care provider. You have been treated by a care provider based on medical findings, not bed availability. (Compl., Doc. 1, at 28).

Plaintiff was similarly dissatisfied with the second level opinion, and appealed to the Director's Level. Plaintiff's grievance was again denied at the Director's Level. The inmate appeals chief stated there was no need for further relief at the DLR (Director's Level Review), noting that plaintiff's primary care physician determined a bottom bunk was not medically necessary, as the need for the bottom bunk was discontinued. (See Compl., Doc. 1, at 31-32).

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning

4

an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See

Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III.  DISCUSSION

In their motion for summary judgment, defendants argue plaintiff failed to exhaust his administrative remedies prior to bringing this action, there is no evidence that they were deliberately indifferent to plaintiff's medical needs, and even if there was some evidence to support plaintiff's claims, they are entitled to qualified immunity. Plaintiff counters that there is sufficient evidence to prove the defendants were deliberately indifferent to his medical needs.

**A.  Exhaustion**

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the

defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.

The Supreme Court also held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits.  548 U.S. 81, 89-96 (2006).  Thus, exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90. Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id. at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.7 of Title 15 of the California Code of Regulations.  In California, inmates "may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  These regulations require the prisoner to proceed through several levels of appeal:  (1) informal resolution; (2) formal appeal; (3) second level appeal to institution head; (4) third level appeal to the director of the California Department of Corrections and Rehabilitation.  A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy.  See Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2).  Departmental appeals coordinators may summarily reject a prisoner's untimely administrative appeal.  See Cal. Code Regs. tit. 15, §§ 3084.3(c)(6) and 3084.6(c).  If a group of inmates intend to appeal the same decision or action,

one grievance form is used and a list of the participating inmates must be attached. The list must be legible and state the inmates' names, departmental identification numbers, and housing assignment. The form must also be signed by all participating inmates. Currently, California regulations do not contain any provision specifying who must be named in the grievance.

In certain circumstances, the regulations make it impossible for the inmate to pursue a grievance through the entire grievance process. See Brown v. Valoff, 422 F.3d 926, 939 n. 11 (9th Cir. 2005). Where a claim contained in an inmate's grievance is characterized by prison officials as a "staff complaint" and processed through a separate confidential process, prison officials lose any authority to act on the subject of the grievance. See id. at 937 (citing Booth, 532 U.S. at 736 n. 4). Thus, the claim is exhausted when it is characterized as a "staff complaint." See id. at 940. If there are separate claims in the same grievance for which further administrative review could provide relief, prison regulations require that the prisoner be notified that such claims must be appealed separately. See id. at 939. The court may presume that the absence of such a notice indicates that the grievance did not present any claims which could be appealed separate from the confidential "staff complaint" process. See id.

Here, plaintiff filed his inmate grievance in 2007, complaining about the denial of a lower bunk chrono and pain in his wrist.[3] Defendants acknowledge the 2007 grievance was pursued through the Director's Level. However, they argue that grievance failed to identify or complain about the actions of the defendants named in this action. The court agrees that plaintiff did not name any particular individual in the grievance, but that was not required. The grievance plaintiff filed put the prison officials on notice as to his claim, denial of a lower bunk chrono and wrist pain, which is sufficient to exhaust the claim. Thus, the fact that he did not identify the individual defendants to this action in his inmate grievance does not render his claim

---

[3] Plaintiff also filed another inmate grievance in January 2009, again raising the issue of a low bunk chrono (Log # HDSP-31-09-10240). That 2009 grievance was not exhausted until November 2009, which was after this action was initiated. The second denial of a low bunk chrono is therefore unexhausted, but it is not a part of this action.

unexhausted. His claim was sufficiently clear in his grievance to comply with the exhaustion requirement.[4] Thus, defendants' Swingle and Roche's motion for summary judgment based on lack of exhaustion must fail.

The exception to the above, is plaintiff's claims against defendant Deward. In addition to the medical personnel named, plaintiff names a correctional officer, Deward, as a defendant to this action. Plaintiff alleges defendant Deward is liable for failing to protect him from the actions of defendant David. Defendant Deward accompanied plaintiff and defendant David to his cell during the demonstration to observe how plaintiff accessed the top bunk. Plaintiff claims defendant Deward failed to protect him from defendant David's actions and verbal abuse, putting him at risk of harm. Nowhere in any of the inmate grievances before the court does plaintiff raise a failure to protect claim. Thus, any failure to protect claim is unexhausted, and defendant Deward's motion for summary judgment should be granted on that basis.[5]

**B. Medical Treatment**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v.

---

[4] The defendants' position is that plaintiff did not file a separate inmate grievance to address his treatment related to the 2007 grievance process. However, that is not the gist of plaintiff's claim. While he alleges maltreatment by the defendants throughout the grievance process, the gravamen of his claim is the denial of a low bunk chrono. As discussed infra, to the extent plaintiff's claim does relate to his treatment during the grievance process, such a claim cannot survive.

[5] Plaintiff does not claim, nor can he, that defendant Deward had any power to grant or deny him a lower bunk chrono as defendant Deward is not a medical provider.

9

Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical

treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Here, plaintiff does not challenge specific medical treatment or procedures, but rather the denial of a low bunk chrono, which he claims was necessary due to his medical condition. Plaintiff apparently had received a low bunk chrono, dating back to 2003, while housed at a different institution. The basis for that low bunk chrono is not before the court. However, plaintiff had requested a renewal of that low bunk chrono upon his transfer to HDSP. Plaintiff made the request originally to his medical care provider, a nurse practitioner Reid. When his request was denied by FNP Reid, he filed his 602 inmate grievance (log # HDSP-C-07-02326), which is the basis for this action. Pursuant to that grievance, he was interviewed and examined by defendant David. During this interview, defendant David observed plaintiff in his cell climb onto the top bunk. It does not appear that defendant David was plaintiff's medical care provider, but only interviewed plaintiff in connection with his inmate grievance. Defendant David concurred with FNP Reid's determination that a low bunk chrono was not medically necessary for plaintiff, a decision which defendant Swingle agreed with in the denial of Plaintiff's grievance at the first level. In denying the grievance, Dr. Swingle noted that a review had been conducted of plaintiff's CDC-602, unit health record, applicable sections of the California Code of Regulations (CCR) Title 15, Departmental Operations Manual (DOM), and plaintiff's interview with defendant David. Again dissatisfied, plaintiff appealed Dr. Swingle's denial. In response, defendant Roche partially granted his appeal stating plaintiff has the right to

1  discuss treatment options with his primary care provider, but that the primary care provider is the
2  one who will make treatment decisions not Plaintiff.  Dr. Roche's partial grant of plaintiff's
3  appeal was based on plaintiff having been treated by his care provider based on medical findings,
4  but plaintiff's request for a lower bunk chrono was not granted as not medically indicated.

Based on this series of events, plaintiff filed this action.  Thus, it is clear that the basis of plaintiff's claim that his Eighth Amendment rights have been violated by the defendants' deliberate indifference to his medical needs was FNP Reid's original determination that he did not meet the criteria for a lower bunk chrono.  FNP Reid was not named as a defendant to this action.  Rather, plaintiff named only those individuals who were involved in the inmate grievance process, not those involved in his actual medical care treatment.  Whether FNP Reid's decision was erroneous is not before the court as she is not a party to this action.  As discussed below, naming those individuals only involved as reviewers in an insufficient basis for liability.[6]

**C.  Supervisor Liability**

Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.  See id.  The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

---

[6] To the extent plaintiff could claim defendant David is liable for the alleged violation, based on her examination and treatment during the process, defendant David has not been served and is not currently a party to this action.  However, based on the allegations in the complaint and the evidence before the court, such a basis for liability is questionable at best.

(9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 129 S. Ct. at 1948.

Here, it is clear that both defendants Swingle and Roche are named only in their supervisory rolls, not due to their own treatment of plaintiff. Nowhere does plaintiff allege that either Dr. Swingle or Dr. Roche were actually his treating medical providers. As the United States Supreme Court has made clear, defendants Swingle and Roche cannot be held liable for the acts of others, but only for their own actions. Thus, agreeing with a decision another health care provider made, and failing to properly supervise another defendant are insufficient claims to prove liability.

**C. Grievance Process**

Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function

properly failed to state a claim under § 1983). Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment.

Here, to the extent plaintiff is attempting to place liability on the defendants named in his complaint, his claims would arise from decisions made during the inmate grievance process, not from the original medical decisions. Such allegations are insufficient to find liability.

## IV.  CONCLUSION

Plaintiff's claims are based on a decision made by his medical care provider to discontinue his lower bunk chrono. Instead of naming the individual provider who made that decision, plaintiff only names as defendants those individuals who were connected with his inmate grievance. As individuals can only be responsible for their own actions in a § 1983 action, plaintiff's claim against these defendants are insufficient. In addition, while he exhausted his claims regarding the denial of a low bunk chrono, he failed to exhaust any failure to protect claim against defendant Deward. Thus, defendants' motion for summary judgment should be granted.[7]

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment (Doc. 27) be granted;

2. Plaintiff's motion for summary judgment (Doc. 33) be denied;

3. Judgment be entered in favor of defendants; and

---

[7] Defendants also raise a qualified immunity defense in their motion. However, as the undersigned has found the claims raised are insufficient against the defendants named, it is not necessary to address the qualified immunity issue. If the undersigned were to address the claim, however, it is not likely that a reasonable medical care provider in a similar circumstance would have thought his/her conduct would have violated plaintiff's Eighth Amendment rights. See Saucier v. Katz, 533 U.S. 194, 205 (2001).

14

       4.       The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 10, 2011

                                 _____
                                 **CRAIG M. KELLISON**
                                 UNITED STATES MAGISTRATE JUDGE